480 A.2d 1133

**COMMONWEALTH of Pennsylvania**

v.

**Donald Anthony GARRITY, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1983.

Filed July 6, 1984.

Petition for Allowance of Appeal Granted Feb. 21, 1985.

476

Edward J. Bilik, Assistant Public Defender, Greensburg, for appellant.

Judith Karns Ciszek, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before CAVANAUGH, CIRILLO and CERCONE, JJ.

CERCONE, Judge:

This case comes to us on a denial of Donald Anthony Garrity's Post Conviction Hearing Act[1] petition. He and a co-defendant, John Anthony Coccioletti, were found guilty of murder in the third degree by a jury and each was sentenced to terms of imprisonment of from three to ten years. Both defendants perfected their consolidated appeals before the Supreme Court of Pennsylvania which affirmed their judgments of sentence. *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981) (per Larsen, Justice; Roberts, C.J. concurring in result; Flaherty, J. dissenting). Now, pursuant to the Post Conviction Hearing Act, appellant asserts that his trial counsel was ineffective in three respects: in failing to take measures to ensure that a certain statement, exculpatory to appellant, but hearsay as to his co-defendant, would be admitted into evidence;[2] in

1. 42 Pa.C.S.A. § 9541, *et seq.*

2. Appellant suggests that counsel should have made pre-trial application for severance, or, in the alternative, should have requested the

failing to advise appellant of the factors to consider in deciding whether to testify in his own behalf; in failing to challenge the information filed in appellant's case because of the rubber stamp facsimile of the district attorney's signature. Our review of the record in this case persuades us that there is indeed merit to appellant's contention pertaining to the fact that he did not testify at trial. Therefore, we reverse and remand for a new trial.

The case against Garrity and Coccioletti was circumstantial. The testimony at trial established the following. They had been drinking heavily, so much so that one Eckels, a friend and an off-duty policeman, drove them home to Coccioletti's cabin, in a rural area of Westmoreland County. Eckels also took the keys to their vehicles when he left them. Eckels drove to Seven Springs, about 10 minutes from Coccioletti's cabin, when he received a phone call from Garrity the appellant. Garrity told Eckels that John [Coccioletti] was very drunk; "you better come down. John's going crazy. He took the .44 and went outside." It is this statement that was successfully challenged as hearsay at trial as to co-defendant Coccioletti by his attorney. This same statement was admitted at the preliminary hearing over the same objection.

Before Eckels arrived back at the cabin, another friend, one Pankopft, stopped at the cabin to ask Garrity and Coccioletti if they wanted to get breakfast. This was at approximately 2:15 a.m. When the three men had driven a few hundred feet from the entrance to the cabin, on County Line Road, Pankopft noticed that a truck had wrecked into a tree at the side of the road. People had begun to gather, but Pankopft continued down the road. At this time, Coccioletti remarked that he felt somewhat responsible since he threw an M–80 (firecracker) at the truck. (This statement was objected to by both defense counsel, but was admitted.) Within minutes they arrived at the restaurant, but as soon as they ordered, Garrity received a phone call from Eckels.

trial court to redact Coccioletti, the co-defendant's name from the statement in order to make it admissible.

Eckels testified at trial over objection, that he asked Garrity whether they had been involved in any incident, to which Garrity answered "no". Eckels told them to return to the cabin.

The three men got into the car, with Garrity in the back seat, and Coccioletti and Pankopft in front. Pankopft testified at trial that he had driven a short distance when Garrity asked, "What are we going to do with the guns." Pankopft was then instructed to pull off the road, which he did. Garrity and Coccioletti were talking to each other in loud excited voices. Coccioletti produced a revolver, opened his door, and emptied the shells from it. Pankopft resumed driving when Garrity repeated again, "what are we going to do with the guns?" (These statements by Garrity were also admitted over objection.) Coccioletti answered, "We could say they were in Jeannette." The driver then pulled into a driveway since the conversation in the car consisted of the urgency of getting the guns out of the car. At this point, Garrity passed an automatic weapon to Coccioletti who left the car with the guns and placed them under a tree. They then proceeded to Coccioletti's residence. About ten or fifteen minutes after arriving there, Garrity asked Pankopft to go back and retrieve the guns. By this time, Eckels returned to the cabin, having been at the site of the wrecked truck. He told Coccioletti and appellant that there was a man dead in the truck from what appeared to be a gunshot wound. Coccioletti responded—and this statement was admitted over objection of counsel—that they had been shooting across the roadway, but that the only possible way they could have hit anyone was by a ricochet. The evidence established that neither defendant knew the victim. Appellant and Coccioletti were arrested later that morning and charged with the murder of Dale Clarence Clawson, the driver of the truck.

Appellant argues that his statement to Eckels, "you better come down. John's going crazy. He took the .44 and went outside" is the most powerful piece of evidence available to him in that it took place prior to the shooting and

enlisted the aid of a close friend who happened to be a police officer. Appellant contends that it shows that a person conspiring to commit a crime would not ask for help from a police officer. In fact, it is the only exculpatory evidence available to counsel for appellant. It was omitted only because it was hearsay as to Coccioletti. Thus, appellant argues that his trial counsel was ineffective in that he should have been on notice as to the existence of this statement and to the fact that counsel for the co-defendant would object at trial, as he did at the preliminary hearing. (Appellant's trial attorney was hospitalized at the time of the preliminary hearing; an associate represented appellant at that proceeding.) Appellant maintains that his attorney should have either requested that the reference to Coccioletti be redacted to ensure its admission, or, if redaction were impossible, that he should have filed a pre-trial motion for a severance.[3] Appellant also urges that he himself could have introduced that statement had he testified at trial and that counsel's election not to present a defense constituted ineffectiveness of counsel.

**3.** Appellant relies on *Commonwealth v. Young*, 263 Pa.Superior Ct. 333, 397 A.2d 1234 (1979); in that case our Court discussed the particular problems inherent in a joint trial of co-defendants when statements by one are sought to be introduced which implicate the other. We referred to *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in which the United States Supreme Court held that the Sixth Amendment Right to Confrontation is violated if a co-defendant's confession, which inculpates the instant defendant, is used as evidence against the defendant.

"The jury is thus not permitted to consider the nontestifying co-defendant's confession in assessing the defendant's culpability. Redaction, in which all testimonial references to anyone other than the declarant are omitted from the confession, has been approved as an appropriate method of protecting a defendant's rights under *Bruton*. *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977). It must also be recognized, however, that in certain instances a confession cannot be effectively redacted without prejudicing the declarant. (citations omitted.)" *Young, supra*, 263 Pa.Super., at 337, 397 A.2d at 1237.

Given the context of the within challenged statements, redaction as the method to protect appellant's interests would have been impossible. We will not even consider this option. *But see Commonwealth v. Rawls*, 276 Pa.Superior Ct. 89, 419 A.2d 109 (1980).

Counsel is constitutionally ineffective if he fails to raise a claim of arguable merit and it is shown further that such a course of action had no "reasonable basis to effectuate his client's interests." *Commonwealth v. Hubbard*, 472 Pa. 259, 277–78, 372 A.2d 687, 695–96 (1977); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352 (1967). Since this test requires that we examine the approach employed by counsel in light of the available alternatives, a finding of ineffectiveness should never be made unless the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized. *Id.*

At the PCHA hearing, trial counsel for appellant was asked to explain his strategy in proceeding with a joint trial. He related serious discussions with counsel for the co-defendant, a close friend of his.

> Well, it was a very serious discussion, and very concentrated, because it was our feeling, frankly, that since they weren't charged with conspiracy, and the facts as we understood them, [it] was our feeling that the Commonwealth really couldn't proceed to trial, or if they did, they wouldn't be able to prove the case.
>
> . . . . . .
>
> I felt we had a very strong case, talked about severance, but . . .
>
> they [appellant and his father] seemed to have implicit or explicit trust in me, and whatever I determined, . . . it was okay with them at the time, and I felt frankly that the case would be a demurrable case, or we would certainly be able to get it thrown out of Court.

As the PCHA court, which also presided over the trial, explained in its opinion,

> [W]hile the so called exculpatory statement of petitioner may have tended to place all the blame on the co-defendant Coccioletti at the time the statement was made, the other statements . . . would have been admissible in a joint or separate trial, [and] were so damaging to the petitioner that counsel could reasonably have decided that

the only hope of an acquittal was to vigorously pursue that Sixth Amendment confrontation challenges [*Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ] to all the statements with the hope that the Trial Court and/or the Appellate Courts would conclude they were inadmissible.

Thus, what counsel hoped to do in pursuing a joint trial was to keep all of the statements out on the authority of *Bruton v. U.S., supra,* at the risk of also excluding the exculpatory statements of appellant Garrity to Eckels over the phone. In hindsight, this strategy was flawed, since what actually happened, and what was affirmed on appeal, was the admission of all of the inculpatory statements [4] and the exclusion of Garrity's phone call as prejudicial hearsay as to Coccioletti. However, our inquiry must be whether at the time, a separate trial would have had arguable merit.

What appellant would have gained by his separate trial would have been the admission of his phone call to Eckels about Coccioletti going outside the cabin with a .44 either by unobjected-to testimony by Eckels or by his own testimony. However, the statements which tended to inculpate Garrity would also have been admissible. Nevertheless, the one item of evidence that could possibly have placed a doubt in the jury's minds would have been presented to them. Thus, a separate trial would at least have insured the admission of the exculpatory evidence.

Having established the arguable merit of the foregone claim, our next inquiry becomes whether counsel's strategy to pursue a joint trial, with hopes that *Bruton* would bar inculpatory statements, had a reasonable basis designed to promote Garrity's interests. Counsel's hopes stemmed from the fact that appellant and his co-defendant were not charged with conspiracy and, consequently, statements made after the shot had been fired, were not available to

---

**4.** These include: Coccioletti's statement about the M–80, which is inculpatory as to him; Garrity's denial that they had been involved in any incident; Garrity's twice questioning what they should do with the guns; and Coccioletti's statement that they were shooting across the road.

the Commonwealth, where it relied on a co-conspirator's testimony exception to hearsay. After *Commonwealth v. Coccioletti, supra,* their strategy was shown to be erroneous. Their first presupposition as to the defendants not having been charged with conspiracy was not supported by *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975) and *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 386 A.2d 1014 (1978) *petition for allowance of appeal denied.*[5] And their second contention, that the statements were made after the conspiracy had terminated with the death of Clawson, and thus were not admissible under the co-conspirators' exception to the hearsay rule, was shown to be erroneous with the Supreme Court's refinement of that exception in appellant's direct appeal. That Court said:

"[a]lthough the co-conspirator exception to the hearsay rule has not been applied when the declarations are made after arrest and termination of the conspiracy, *Commonwealth v. Ellsworth,* 409 Pa. 505, 187 A.2d 640 (1963), the appellant's declarations in this case were made prior to their arrest while the conspiracy was still in progress."

*Coccioletti,* 493 Pa. 103, at 113, 425 A.2d 387, at 392.

■ It appears, then, that until appellant's direct appeal, explicit authority for the admission of the challenged statements in a joint trial arguably did not exist in Pennsylvania. For that reason, we cannot fault counsel for his strategy of pursuing a joint trial at least up to the point of the admission of the statements. Counsel cannot be expected to take actions unsupported by existing law. *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981).

It is at this point that counsel's recommendations to appellant that he not testify became critical. Trial counsel testified at the PCHA hearing that he never prepared Garrity to testify, never discussed any advantage to be gained by testifying, and, even after his strategy of keeping out the inculpatory statements was foiled, that he persisted

5. These cases illustrate that the Supreme Court has extended the co-conspirator exception to admit declarations by "co-participants" in a crime even where conspiracy has not been charged or proven.

in his belief that appellant should not testify "because I felt the record could be protected by no testimony."

 It has already been established that appellant's testimony would have brought the substance of the Eckels' phone call to the consideration of the jury. Thus, it would have had arguable merit. In addition, trial counsel stated that he never intended to have appellant testify and that appellant unquestioningly placed all of his trust in him and his strategy. However, trial counsel also admitted that appellant was bright and articulate. He was a college graduate. He had no prior criminal record and no prior inconsistent statements by which he could have been impeached. Thus, we are unable to find that counsel's persistence in his strategy of not presenting a defense had any basis in appellant's interests. This is so especially in light of counsel's testimony that had appellant testified he would have denied shooting Dale Clawson and he would have denied agreeing with John Coccioletti to go shoot anyone. While the decision not to present a defense is a tactical one and will not be deemed ineffective stewardship if there is a reasonable basis for that decision, *Commonwealth v. Rice,* 456 Pa. 90, 318 A.2d 705 (1974), in the instant case, we are unable to discern the reasonable basis.

 A person's right to a fair trial and a meaningful defense strikes at the heart of due process of law. *Commonwealth v. Kennedy,* 451 Pa. 483, 305 A.2d 890 (1973). Balanced against this principle is an appellate court's reluctance to second-guess counsel's tactical decisions. For example, our Supreme Court refused to attribute ineffectiveness to counsel's advice to appellant that he not testify in *Commonwealth v. Spells,* 490 Pa. 282, 416 A.2d 470 (1980). However, in that case, appellant had been convicted of a prior burglary, had uttered prior inconsistent statements, and had participated in a thorough colloquy with the court regarding his decision not to testify. In *Commonwealth v. Roman,* 494 Pa. 440, 431 A.2d 936 (1981), our Supreme Court found counsel afforded effective assistance to appellant in advising him not to testify at his second trial in that

his testimony from the first trial could serve as an impeachment tool; the case against appellant was considered by counsel to be weaker than at the first trial owing to certain redacted prejudicial evidence, and, appellant's testimony would expose him to cross examination on damaging evidence not presented by Commonwealth witnesses.

It is our opinion that such factors as contributed to trial counsels' reasoned advice not to testify in *Spells* and *Rice, supra,* are not present in the instant case. We find counsel was ineffective in failing to re-evaluate his strategy to advise appellant not to testify when appellant, by the facts of the case and the circumstances as they evolved at trial, had nothing to lose and something to be gained by his testifying on his own behalf.[6] For counsel to have relied upon his chances of prevailing on appeal and to exalt keeping the record clean over the benefits that could have been gained by altering his strategy and letting appellant testify when his expectations regarding the statements were thwarted, belies any finding of effective assistance. Therefore, appellant is entitled to a new trial.

 Appellant challenges, under the aegis of ineffectiveness of counsel for failure to raise it, the practice of the Westmoreland County District Attorney's Office in executing appellant's information by the initials of an assistant district attorney prior to the filing of proper authorization of record pursuant to 42 Pa.C.S.A. § 8931(i). He also challenges the fact that the District Attorney's signature was "rubber stamped". Moreover, appellant contends that a proper review of the facts of his case were not made

---

6. The dissent cites *Commonwealth v. Rawles,* 501 Pa. 514, 462 A.2d 619 (1983), for what it terms "the principle that the ultimate decision of whether to testify rests on the defendant." The footnote in *Rawls* which states that proposition relies on *Commonwealth v. Good,* 481 Pa. 529, 393 A.2d 30 (1978) and *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975); those cases and the others which confront the complaints of a nontestifying defendant presume that he had been advised by his counsel, in his or her rightful role as advocate, of the advantages and disadvantages of testifying. The record in this case establishes that appellant was not so advised. Thus, it cannot be said that appellant made a decision not to testify.

simultaneous with the approval of the information as is required by Pa.C.S.A. § 8931(d). Although appellant has not specifically requested it, the remedy for a defective information is discharge. Thus, despite our disposition on the aforementioned issue, we are constrained to review this third argument of appellant. We do not agree with appellant, in that we conclude that he is entitled to no relief on this issue.

Testimony by the assistant district attorney, whose initials appear on the information, at the PCHA hearing established that his practice was to check informations for conformity with the statutes. He stated that he was unable to recall whether he made any independent review of the record prior to approving the information. However, he did testify that he was familiar with the facts of the case and had discussed segments of it with the assistant district attorney who conducted the preliminary hearing. The PCHA record further reveals that trial counsel was unaware of any defect in the information. Appellant urges that counsel should be deemed ineffective for failure to challenge the information pre-trial.

■ Our Supreme Court in *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981) resolved the question of whether a criminal information, which bears a rubber stamp facsimile signature of a district attorney with the manually inscribed initials of an assistant district attorney, has been "signed" for purposes of Pa.R.Crim.P. 225(b) and 42 Pa.C. S.A. § 8931(e). The Court held that the approval and initialling of the information by an assistant district attorney, along with stamped signature of the District Attorney, complies with our Rules and the Judicial Code. *Id.*, 492 Pa. at 470, 424 A.2d at 1287. However, both *Contakos* and *Commonwealth v. Levenson*, 282 Pa.Superior Ct. 406, 422 A.2d 1355 (1980), make clear that where a rubber stamp is employed to represent a district attorney's signature and an assistant initials the information near the stamped signature, the signature will be valid only if the requisite desig-

nation of authority for the A.D.A. has been filed with the clerk of courts pursuant to 42 Pa.C.S.A. § 8931(i).

The instant case involves the same county and same issue as that raised in the recent *en banc* case *Commonwealth v. Allen Wayne Williams*, 323 Pa.Superior Ct. 512, 470 A.2d 1376 (1984). There, this Court refused to grant a discharge of appellant on the grounds raised in this case, *viz.*, the lack of a properly filed authorization with the clerk of courts by the district attorney's designee. This court reasoned as follows:

> The signature requirement of the Judicial Code, *supra*, is designed to assure the authenticity of an information and to guarantee that the district attorney has inquired fully into all facts and circumstances attendant to a particular case and has made a reasoned evaluation of the propriety of initiating criminal proceedings against a defendant. *Commonwealth v. Levenson, supra, See, also Commonwealth v. Emanuel*, 501 Pa. 581, 462 A.2d 653 (1983). We fail to perceive how these goals would be furthered in the instant case by quashing the information and discharging appellant simply because the Commonwealth filed the required designation of authority in a tardy manner. 323 Pa.Superior Ct. at 519–520, 470 A.2d at 1380.

In the instant case, *when* the actual designation was filed in the office of the clerk of courts is not of record. The lower court's opinion, however, does describe the instant problem as arising prior to the filing. More to the heart of the reason for the designation is an inquiry into the review that was conducted. The assistant whose initials appear in the information, although admittedly somewhat bereft of a recollection surrounding his procedure in this case, did possess requisite knowledge of it to justify his approval of the information. Therefore, because a pre-trial motion challenging the information by trial counsel would have been to no avail, or at the most, would have warranted a re-filing of

the information,[7] we are unable to attribute ineffectiveness to trial counsel for his failure to so act.

For all of the above reasons, the order of the lower court is reversed; case is remanded for a new trial. Jurisdiction is relinquished.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent. I cannot agree with the majority's holding that trial counsel's advice to his client (appellant) not to testify at trial amounted to ineffective assistance of counsel.

At trial, counsel originally advised appellant not to testify when he thought he would be able to exclude certain statements of another witness which would tend to inculpate appellant. Although the inculpatory statements were admitted, counsel continued to recommend that his client not testify. Appellant was convicted of third degree murder.

The majority opinion holds that once the inculpatory statements of the other witness were admitted, counsel's continued advice to his client not to testify was without reasonable basis. The majority reasons that: 1) the only available exculpatory evidence was that which could be elicited from appellant's testimony; 2) counsel had "nothing to lose" and everything to gain by putting appellant on the stand.

7. In *Commonwealth v. Turner,* 309 Pa.Superior Ct. 330 n. 2, 455 A.2d 185 n. 2 (1983), this court stated:

It should be noted that the *Veneri* [306 Pa.Superior Ct. 396, 452 A.2d 784 (1982) ] decision specifically found that failure to comply with the signature requirement of Pa.R.Crim.P. 225(b) was not so significant a breach as to justify the extreme remedy of discharge. In the instant case, the lower court noted that raising this issue pre-trial may well have been futile since "the net effect of a successful quashing of the information for lack of a signature, would be that the District Attorney would refile the information with the proper signature...."

I submit that the majority oversteps this Court's function with respect to ineffectiveness claims because it judges effectiveness on the basis of an after the fact look at the success of counsel's chosen strategy. This approach is unacceptable. In assessing claims of ineffective assistance of counsel "we must be wary not to weigh the actual results of the trial strategy." *Commonwealth v. Roman,* 494 Pa. 440, 448, 431 A.2d 936, 939 (1981). We must look for the "reasonable basis" of a chosen tactic at the time it was implemented, not after it has failed. "Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had *any* reasonable basis." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 600, 235 A.2d 349, 353 (1967) (emphasis added).

My review of the facts in this rather bizarre case leads me to the conclusion that trial counsel's basis for opting not to put appellant on the stand was most reasonable. The Commonwealth's case was purely circumstantial and the evidence somewhat attenuated. Counsel chose to rest on what he thought was a weak case for the Commonwealth. He elected not to expose his client to cross-examination, which could lead to corroboration and exacerbation of the already admitted inculpatory evidence. *See, Commonwealth v. Roman, supra* (recognizing the inherent danger of exposing client to cross-examination). Counsel did not have "nothing to lose" as the majority suggests. Counsel informedly and deliberately weighed the risk of dangerous cross-examination against the possible exculpatory evidence that appellant had to offer. On the basis of this calculation, counsel recommended that appellant not take the stand. Although appellant was ultimately convicted, counsel's advice was not unsound.

In addition to improperly assessing the basis of counsel's trial strategy, the majority ignores the principle that the ultimate decision of whether to testify rests on the defendant. *Commonwealth v. Rawles,* 501 Pa. 514, 462 A.2d 619 (1983). Here, the record indicates that appellant was col-

lege-educated, intelligent and, moreover, that he was informed of his right to testify. There is no indication that appellant disagreed with counsel's advice that he not take the stand. In such circumstances, counsel cannot be found ineffective. *Commonwealth v. Rawles, supra.* The consequences of failing to testify rest squarely on appellant's shoulders.

For the foregoing reasons, and because I subscribe to the majority's disposition of appellant's remaining claims, I would affirm the order of the trial court.