J-E01001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KARIM HUSIEN WRIGHT, | |
| Appellant | No. 648 MDA 2011 |

Appeal from the PCRA Order entered March 11, 2011,
in the Court of Common Pleas of Berks County,
Criminal Division, at No(s): CP-06-CR-0004799-2002

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., and
PANELLA, DONOHUE, ALLEN, LAZARUS, MUNDY, and OLSON, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 05, 2014**

Karim Husien Wright ("Appellant") appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. After careful review, we affirm.

The pertinent facts and procedural history are as follows:  On May 3, 2002, Appellant shot and killed Navarro Dante Williams ("the victim") inside an after-hours establishment called the Tunnel Club. Prior to the shooting, Appellant rented a room at the Ramada Inn with Lynnita Theodile and her boyfriend, Dante Jackson. Two other men arrived at the hotel and Appellant left with them, stating that he felt "like getting into something." N.T., 3/24/03, at 123. Ms. Theodile did not observe Appellant with a gun at the time.

Appellant then traveled to the Tunnel Club. Jermaine Holmes testified that he witnessed Appellant become involved in a brief physical altercation with the victim. According to Mr. Holmes, Appellant and the victim were involved in a fistfight when Appellant pulled a handgun from his waistband with his left hand and shot the victim in his right upper chest. The wound caused massive internal bleeding and resulted in the victim's death. After the shooting, Mr. Holmes saw Appellant run toward the front door, although he did not see him exit that door. Another eyewitness, Jesus Hernandez Corona, testified that he did not see Appellant fire the fatal shot, but that immediately after gunshots rang out, he observed Appellant standing in the area where the victim was shot holding a firearm in the air. Following the shooting, Appellant traveled to North Carolina with Dante Jackson.

While en route, Appellant admitted to Jackson that he killed the victim. Mr. Jackson, who was a juvenile, signed a written statement for police in the presence of his father, acknowledging Appellant's confession. Additionally, the Commonwealth introduced evidence from Appellant's uncle, Michael Dengler, that Appellant admitted killing the victim. According to Mr. Dengler, Appellant stated that he left the club after an altercation with the victim, retrieved a gun, and then returned and shot the victim. Finally, a Commonwealth witness testified that upon returning to his prison block following a religious service, he relayed a message from Appellant to Mr. Holmes, a fellow inmate, that if Mr. Holmes testified, "something may happen" to his family. N.T., 3/26/03, at 169-70.

On September 30, 2002, the Commonwealth charged Appellant with first-degree murder, aggravated assault causing serious bodily injury, aggravated assault causing bodily injury with a deadly weapon, recklessly endangering another person, unlawful possession of a firearm, possessing a firearm without a license, and two separate counts of possessing an instrument of crime. At the conclusion of trial, the jury convicted Appellant of the aforementioned charges. The trial court then sentenced Appellant to the mandatory term of life imprisonment without parole for the murder charge, and a consecutive sentence of three to seven years imprisonment for possession of a firearm without a license.

Appellant filed a timely appeal. In an unpublished memorandum filed on March 9, 2004, this Court affirmed Appellant's judgment of sentence. **Commonwealth v. Wright**, 850 A.2d 17 (Pa. Super. 2004). Appellant did not file a petition for allowance of appeal to our Supreme Court. On March 25, 2005, this Court received Appellant's timely *pro se* PCRA petition, which we forwarded to the Berks County Clerk of Courts pursuant to Pa.R.A.P. 905(a)(4).

The Berks County Clerk of Courts received Appellant's petition on April 14, 2005. On May 3, 2005, the PCRA court appointed counsel. In the years that followed, appointed counsel, as well as her replacement, filed several requests for a continuance, and then sought leave to withdraw. On January 3, 2008, third PCRA counsel was appointed for Appellant. PCRA counsel

filed, and the PCRA court granted, multiple continuances. Ultimately, PCRA counsel filed a twenty-three page **Turner**/**Finley**[1] no-merit letter and a request to withdraw on August 24, 2010.

Within this letter, PCRA counsel stated that he had "reviewed the entire official file in [Appellant's] case located in the Clerk of Courts Office, Berks County, Pennsylvania. In addition, [PCRA counsel] has reviewed each allegation in [Appellant's] PCRA petition, reviewed the transcriptions of the proceeding, thoroughly analyzed and researched the factual and legal theories of the case, and made conclusions based on the record." No-Merit Letter, 8/24/10, at 2. PCRA counsel then addressed each issue Appellant sought to raise, and explained why, in his professional opinion, the claim lacked merit. With regard to Appellant's claim that trial counsel failed to investigate and/or call five witnesses, PCRA counsel averred in the letter that he informed Appellant "to provide as much information as possible to permit PCRA counsel to investigate and contact them." *Id.* at 4. PCRA counsel further averred that he "explained to [Appellant] that in order to make a request to the PCRA Court for funds to hire a private investigator, [Appellant] would need to provide some support beyond the mere suggestion that the witnesses would have helped support his innocence." *Id.* at 4-5. Nevertheless, PCRA counsel stated that he attempted to

---

[1]**See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (en banc).

investigate each of these witnesses, and based on that investigation, Appellant could not establish trial counsel's ineffectiveness. Concluding that Appellant's remaining claims were meritless, PCRA counsel sought to withdraw.

On February 17, 2011, the PCRA court issued a fifteen-page Pa.R.Crim.P. 907 notice of intent to dismiss, discussing the merits of each of the issues Appellant raised in his *pro se* petition, and permitting PCRA counsel to withdraw. Appellant filed a *pro se* response to the notice of dismissal, and the court issued its final order on March 11, 2011, denying Appellant's petition.

Appellant filed a timely *pro se* appeal to this Court. In an unpublished memorandum filed on December 17, 2012, a divided panel affirmed the PCRA court's denial of post-conviction relief. On January 11, 2013, Appellant filed a *pro se* "Application for En Banc Reargument." By order entered March 11, 2013, this Court granted Appellant's petition for *en banc* reargument, and withdrew the original panel decision. On October 21, 2013, we entered an order directing the PCRA court to appoint counsel to represent Appellant for purposes of *en banc* reargument. Current counsel entered his appearance on November 4, 2013.

On January 7, 2014, in lieu of an advocate's brief, current counsel filed an **Anders**[2] brief and a petition to withdraw. Compliance with **Anders** applies to counsel who seeks to withdraw from representation on direct appeal. **Anders** imposes stricter requirements than those imposed when counsel seeks to withdraw during the post-conviction process pursuant to **Turner**/**Finley**, **supra**. **See Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004). Thus, we will assess counsel's assertion that the issues Appellant wishes to raise have no merit under a **Turner**/**Finley** analysis.

Our review of current counsel's **Anders** brief reveals that it fails to comply with even the more liberal requirements of a **Turner**/**Finley** letter. **See generally**, **Commonwealth v. Pitts**, 981 A.2d 875 (Pa. 2009). Rather than discuss the eleven issues Appellant originally sought to raise in his *pro se* PCRA petition, current counsel discussed and rejected two of Appellant's claims that the original dissenting judge "zeroed in on" in the now withdrawn panel decision. **Anders** Brief, at 8. Nevertheless, current counsel concurs in PCRA counsel's conclusion that all of Appellant's claims lack merit. Accordingly, while we deny current counsel's petition to

---

[2] **Anders v. California**, 386 U.S. 738 (1967).

withdraw, we will review each claim Appellant raised in his previous *pro se* appeal to this Court.[3]

Those twenty issues may be summarized as follows:

1. Trial counsel was ineffective for failing to subpoena Angel Freytiz, a bouncer who had searched Appellant when he came into the club who would testify that Appellant did not have a gun.

2. Trial counsel was ineffective for failing to put Sam Castillo on the stand, a bartender who saw Appellant at the bar when shots were fired.

3. Trial counsel was ineffective for failing to subpoena Gregg Jefferson, who was with Appellant the whole time and would testify Appellant was not the shooter.

4. Trial counsel was ineffective for failing to call the mother of a defense witness who would have testified that she did not meet lead Criminal Investigator Christopher Santoro, contrary to his testimony.

5. Trial counsel was ineffective for failing to subpoena Melanie Hallman, who would testify that she saw an argument outside the club in which 8-10 shots were fired. She also saw the victim being put in the van that took him to the hospital and saw a purple car speed away.

6. Trial counsel was ineffective for failing to properly cross-examine and impeach state witness Jermaine Holmes through statements that contradict testimony, prior drug charges, and pending charges. Trial counsel

_____

[3] In his response to current counsel's **Anders** Brief, Appellant challenges current counsel's decision to withdraw rather than file an amended petition. A claim of ineffective assistance of appellate PCRA counsel cannot be raised at this time. Nevertheless, as discussed **supra**, because all of Appellant's claims are meritless, Appellant has not been prejudiced by any perceived deficiencies in current counsel's performance.

should have shown that Criminal Investigator Santoro was lying.

7. Did the PCRA court abuse its discretion and/or err when it allowed PCRA counsel to withdraw?

8. Should Appellant be afforded all records/documents relating to judgment and conviction as to allow Appellant to research the record for meritorious appeal issues and to cite the record in his *pro se* brief?

9. Did the Commonwealth withhold exculpatory evidence and/or **Brady v. Maryland** material and/or **Giglio v. United States**, and/or Jencks Act (18 U.S.C. § 3500) material and their progeny when the Commonwealth failed to disclose material evidence to the defense relating to Commonwealth witnesses; was trial counsel ineffective for failing to investigate/obtain same and was all counsel ineffective for failing to litigate same on appeal?

10. Was trial counsel ineffective for failing to present and/or investigate known evidence that someone other than Appellant committed the crime; was all prior counsel ineffective for failing to litigate same on appeal?

11. Was trial counsel ineffective for failing to call witnesses to aid the defense; was all prior counsel ineffective for failing to appeal the same?

12. Was trial counsel ineffective for failing to object to the Commonwealth's witness who testified about the procedures and/or results of luminol (blood presence test) that said witness did not perform and was not qualified as an expert; and did the trial court err/abuse its discretion when it failed to strike said testimony and/or give curative instructions relating to same; was all prior counsel ineffective for failing to litigate same on appeal?

13. Was trial counsel ineffective for failing to strike jurors who knew witnesses and/or people involved in the case and who knew Appellant's family members; was all prior counsel ineffective for failing to litigate same on appeal?

14. Was trial counsel ineffective for failing to object to witnesses who were not sequestered but sat in the trial

audience and then gave trial testimony; was all prior counsel ineffective for failing to litigate same?

15.  Was the interpreter used in these proceedings properly certified/qualified to be used in such capacity; was all prior counsel ineffective for failing to litigate same on appeal?

16.  Did the prosecution commit misconduct during closing arguments, and by allowing false testimony by its witnesses at trial; was trial counsel ineffective for failing to object to same; was all prior counsel ineffective for failing to litigate same on appeal?

17.  Was the prosecution's lead investigator (witness) acts of witness harassment, coercion of witnesses' statements, and lying under oath, denying Appellant a fair trial; was trial counsel ineffective for not objecting to same; was all prior counsel ineffective for failing to litigate same on appeal?

18.  Did the trial court abuse its discretion/err when it allowed a witness to evade questions during cross-examination through a Spanish interpreter; was counsel ineffective for failing to remedy same; was all prior counsel ineffective for failing to litigate same on appeal?

19.  Was Appellant's right to testify denied/infringed upon when trial counsel inadequately advised Appellant concerning Appellant's right to testify for the defense; was all prior counsel ineffective for failing to litigate same on appeal?

20.  Trial counsel was ineffective for failing to investigate available fingerprints that could shed light on who the killer was.  Trial counsel failed to investigate defense witness Desiree Portner's statement before relying on her as a witness.

*See* Appellant's Brief at 1-8.

This Court recently described our scope and standard of review as follows:

- 9 -

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa.Super. 2010). This review is limited to the findings of the PCRA court and the evidence of record. *Id.* We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. *Id.* This Court may affirm a PCRA court's decision on any grounds if the record supports it. *Id.* Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa.Super. 2011). However, we afford no such deference to its legal conclusions. *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 442 (2011); *Commonwealth v. Reaves*, 592 Pa. 134, 923 A.2d 1119, 1124 (2007). Where the petitioner raises questions of law, our standard of review is de novo and our scope of review plenary. *Commonwealth v. Colavita*, 606 Pa. 1, 993 A.2d 874, 886 (2010).

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012).

Appellant's first five issues and issue eleven each pertain to trial counsel's failure to call certain witnesses to testify. Accordingly, we address those six issues together. "To properly plead ineffective assistance of counsel, a petitioner must plead and prove: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. If a petitioner fails to plead or meet any elements of the above-cited test, his claim must fail." *Id.* at 1194. In addition, where the claim pertains to counsel's alleged failure in calling a witness, the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the

witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1143 (Pa. 2011); **Commonwealth v. Cox**, 983 A.2d 666, 692 (Pa. 2009).

With regard to each witness, Appellant has failed to establish one or more of the **Chmiel** factors. Instead, he merely asserts that trial counsel was ineffective for refusing to interview and subpoena Angel Freytiz, Samuel Castillo, and Gregg Jefferson. In addition, he maintains that trial counsel should have called the mother of Felicia Martin to impeach the testimony of the lead criminal investigator in this matter, and Melanie Hallman to testify that she saw an argument outside the club where eight to ten shots were fired and the victim was placed in the van that transported him to the hospital.

Our review supports the Commonwealth's assertion that Appellant has not met his burden of establishing that the witnesses existed, were available, that trial counsel should have known of the witnesses, or that they were willing to testify on his behalf. As discussed above, PCRA counsel informed Appellant that he needed more information before requesting funds for a private investigator. **See supra.** Moreover, as to Gregg Jefferson, our review supports the Commonwealth's contention that Appellant admitted to PCRA counsel that Jefferson was not available at the time of trial. **See** No-Merit Letter, 8/24/10, at 6. In addition, our review also supports the

Commonwealth's contention that Appellant does not explain how the proposed testimony of Angel Freytiz, Samuel Castillo, and Felicia Martin's mother could have changed the outcome of the trial, particularly when Appellant confessed to two different people that he killed the victim. Finally, with respect to Melanie Hallman, our review supports the Commonwealth's contention that Appellant acknowledged that trial counsel did not wish to call her because counsel's prior experiences with the witness demonstrated the witness' unreliability. *See* No-Merit Letter, at 7-8.

In sum, because Appellant has not advanced any argument as to the tripartite ineffectiveness test or provided any argument relative to the law pertaining to the failure to call a witness, these issues fail. ***Commonwealth v. Paddy***, 15 A.3d 431, 448 (Pa. 2011).

In his sixth issue, Appellant submits that counsel was ineffective for not cross-examining Jermaine Holmes about his prior inconsistent statement to the police, his prior drug charges, and pending charges. Additionally, he baldy asserts that trial counsel should have shown that Criminal Investigator Santoro was lying.

Our review of the record refutes Appellant's claim. Not only did trial counsel cross-examine Mr. Holmes about his pending criminal charges, and his delay in coming forward, the Commonwealth itself elicited information from Mr. Holmes regarding his initial refusal to identify Appellant as the assailant and his incarcerated status. Specifically, the Commonwealth

indicated that Mr. Holmes was in jail for drug charges and that he originally told police that he did not see who shot the victim. Thus, the jury was clearly apprised of Mr. Holmes' criminal background, the possibility that he was testifying to curry favor with the prosecution, and his credibility issues. Because Appellant has failed to identify any additional information about which trial counsel should have inquired, his ineffectiveness claim fails. **See Commonwealth v. Sneed**, 45 A.3d 1096, 1108 (rejecting the PCRA petitioner's claim that trial counsel did not adequately cross-examine a Commonwealth witness).

In his seventh issue, Appellant asserts that the PCRA court abused its discretion in permitting PCRA counsel to withdraw.[4] In support of this argument, he claims that, as with deficient performances of all prior post-conviction counsel, he was essentially abandoned by his attorneys, a conclusion relied upon by this Court in **Commonwealth v. Hampton**, 718 A.2d 1250 (Pa. Super. 1998), as a basis for relief. We disagree.

This Court recently summarized the **Turner/Finley** requirements in **Commonwealth v. Rykard**, 55 A.3d 1177 (Pa. Super. 2012). We stated:

> The **Turner**/**Finley** decisions provide the manner for post-conviction counsel to withdraw from representation. The holdings of those cases mandate an independent review of

_____

[4] Appellant properly preserved his claim of PCRA counsel's ineffectiveness by first raising the challenge in his response to the PCRA court's Pa.R.Crim.P. 907 notice of intent to dismiss. **See generally**, **Pitts**, **supra**.

- 13 -

> the record by competent counsel before a PCRA court or appellate court can authorize an attorney's withdrawal. The necessary independent review requires counsel to file a "no-merit" letter detailing the nature and extent of his review and list each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court, or an appellate court if the no-merit letter is filed before it, **see Turner**, **supra**, then must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit.

**Rykard**, 55 A.3d at 1184 (citation omitted).

As detailed above, PCRA counsel filed a twenty-three page no-merit letter addressing each of the issues Appellant forwarded in his *pro se* petition. Citing to proper legal precedent, and indicating that Appellant could not establish actual prejudice, PCRA counsel concluded that Appellant's ineffectiveness claims were without merit. After reviewing this letter, and performing its own independent review, the PCRA court issued a fifteen-page notice of intent to dismiss that addressed Appellant's issues on the merits, agreed with counsel's assessment, and therefore permitted PCRA counsel to withdraw.

Although the case history of Appellant's quest for post-conviction relief includes a succession of court-appointed counsel and multiple continuances, we cannot conclude that Appellant was abandoned by PCRA counsel as was the petitioner in **Hampton**, **supra**. Indeed, as PCRA counsel stated in his **Turner**/**Finley** no-merit letter, Appellant was not forthcoming with adequate information upon which to investigate certain witnesses. Additionally, PCRA counsel stated:

> [Appellant] has suggested during the pendency of his PCRA proceedings other witnesses he believed should have been investigated. However, [Appellant] has not provided his prior PCRA counsel or current PCRA counsel with sufficient information to investigate the whereabouts of the witnesses or how their testimony would have changed the outcome of the trial.

No-Merit Letter, 8/24/10, at 8. Therefore, it is not clear from a review of the record that prior post-conviction counsel were solely responsible for the delay in this case. Furthermore, since we have already rejected Appellant's claims of ineffectiveness, Appellant cannot demonstrate that PCRA counsel rendered ineffective assistance. Therefore, we do not find that the PCRA court abused its discretion in permitting PCRA counsel to withdraw.

Appellant's remaining arguments require little discussion. To the extent that Appellant has raised certain issues as a layered claim of ineffectiveness, we note that, if we find trial counsel was not ineffective, subsequent counsel cannot be deemed ineffective for failing to pursue the claim further. **See Commonwealth v. Rykard**, 55 A.3d at 1190 (citation omitted) (explaining "layered claims of ineffectiveness are not wholly distinct from the underlying claims because proof of the underlying claim is an essential element of the derivative ineffectiveness claim").

Appellant's eighth issue is that he was not afforded the records relating to his judgment and conviction. This assertion is belied by the record, where PCRA counsel filed a certificate of service noting that he mailed copies of all documents pertaining to the case, including notes of testimony, to Appellant.

In his ninth position advanced in this appeal, Appellant alleges a *Brady* violation. According to Appellant, his uncle, Mr. Dengler, was a paid Commonwealth informant, and the Commonwealth did not turn over this information to the defense. At trial, Mr. Dengler testified that he was not promised anything by the Commonwealth in return for his testimony. N.T., 3/25/03, at 260. Hence, this claim is devoid of merit.

The next issue Appellant raises, that trial counsel was ineffective for failing to present or investigate evidence that another person committed the crime, is waived for failure to present the issue below. *Commonwealth v. Wallace*, 724 A.2d 916, 921 n.5 (Pa. 1999). Additionally, the claim fails for lack of development of the ineffectiveness test. *Commonwealth v. Steele*, 961 A.2d 786, 797 (Pa. 2008).

Appellant's twelfth issue, relating to trial counsel's alleged failure to object to testimony regarding the use of luminol, is waived for the same reasons. Further, trial counsel did object to the testimony, and was overruled in part and sustained with respect to conclusions the officer drew from the luminol test. N.T., 3/24/03, at 99-100.

The thirteenth claim Appellant raises on appeal is that trial counsel was ineffective for failing to strike jurors who knew witnesses involved in the case and members of Appellant's family. In his brief, Appellant does not identify the jurors who possessed this familiarity, nor does he set forth the names of the involved witnesses or family members. As Appellant utterly

fails to develop this issue, it necessarily fails. *See Steele*, 961 A.2d at 797. Moreover, although Appellant did assert the names of jurors and witnesses in filings with the PCRA court, we agree with its conclusion that Appellant could not establish prejudice. *See* PCRA Court Opinion, 5/27/11, at 10.

In his fourteenth issue, Appellant claims that trial counsel was ineffective for not requesting that Ms. Collado, Ms. Theodile, and Barry Jackson, the father of Dante Jackson, be sequestered. Consistent with his prior averments, Appellant presents no argument on the ineffectiveness test. Our review of the record supports the Commonwealth's assertion that, even if the witnesses were not sequestered, their testimony did not overlap. Notably, Ms. Theodile testified about Appellant's actions before he arrived at the Tunnel Club. Ms. Collado indicated that she saw Appellant at the club, but did not witness him fire the fatal shot. Lastly, Barry Jackson indicated that he accompanied his son to the police station and that his son signed a written statement acknowledging that Appellant admitted shooting the victim. We fail to discern how neglecting to sequester these witnesses could have prejudiced Appellant.

Next, Appellant argues that trial counsel was ineffective for not seeking a certified Spanish interpreter, apparently to interpret the testimony of Mr. Corona. Appellant did not raise this issue before the PCRA court nor does he advance any legal argument or citation relative to this issue. Therefore, the issue is waived. *Wallace*, *supra*.

The sixteenth issue Appellant posits is an ineffective-assistance claim relative to alleged prosecutorial misconduct occurring during the Commonwealth's closing argument. Appellant does not specify in his brief how the prosecution acted inappropriately, but states that it presented false testimony. Again, Appellant's undeveloped claim is waived. **Steele**, **supra**.

The Commonwealth suggests, based on Appellant's representations before the PCRA court, that Appellant is referencing the testimony of Dante Jackson. When called by the Commonwealth at trial, Mr. Jackson denied that Appellant confessed to killing the victim, and disavowed a signed statement he had given the authorities in the presence of his father. **See** N.T., 3/25/03, at 213-222. On cross-examination, Mr. Jackson reiterated that his detailed statement was not the truth. **Id.** at 223.

After Mr. Jackson completed his testimony, the trial court ordered, outside the presence of the jury, that he be detained for committing perjury. N.T., 3/25/03, at 241. Subsequently, Mr. Jackson indicated that he wished to retake the stand and admit that Appellant confessed to him. **Id.** at 347-348. However, the trial court did not permit him to do so. **Id**. at 349. Thus, it is evident that, absent waiver, Appellant's claim is meritless since the Commonwealth did not induce any false testimony.

The seventeenth issue that Appellant raises is that Criminal Investigator Santoro harassed a witness, lied under oath, and coerced witness statements. According to Appellant, Felicia Martin and her mother

were coerced and harassed into signing statements and lying under oath. Our review of the record supports the Commonwealth's assertion that this claim is waived because Appellant did not raise this issue before the PCRA court. **Wallace**, **supra**. Even if the issue was preserved, Ms. Martin did not provide testimony that damaged Appellant, as she refused to identify him as the shooter, and therefore, no prejudice could have resulted. **See** N.T., 3/26/03, at 408-14. Furthermore, Ms. Martin's mother did not testify; thus, it is unclear how Appellant's assertion of coercion or harassment relates to her.

In Appellant's eighteenth claim, he contends that trial counsel was ineffective for allowing a witness to evade questions during cross-examination through a Spanish interpreter. Presumably, Appellant is referencing Mr. Corona, but he does not identify the witness nor does he present any cogent legal argument in his brief. For these reasons, his issue fails. **Steele**, **supra**.

Appellant's penultimate issue is that counsel's advice caused him to unknowingly waive his right to testify. Appellant asserts that trial counsel advised him "that if he took the witness stand that he would be impeached with prior homicide incidents." Appellant's Brief at 7. He then argues that he could only be impeached based on prior convictions, and that if he testified he would have identified "the true culprit and the clothes he wore." **Id.** at 7. Our review of the record refutes Appellant's claim.

In **Commonwealth v. Lawson**, 762 A.2d 753 (Pa.Super. 2000), we

stated:

> It is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify. **See Commonwealth v. Fletcher**, 561 Pa. 266, 750 A.2d 261, 274-75 (2000); **Commonwealth v. Schultz**, 707 A.2d 513, 520 (Pa.Super.1997) ("While, in retrospect, appellant may believe her failure to testify prejudiced her, the fact remains that appellant's decision was fully informed and voluntary. As such, neither trial nor appellate counsel may be deemed ineffective in this regard."). **See also Commonwealth v. Wallace**, 347 Pa.Super. 248, 500 A.2d 816, 819-820 (1985); **Commonwealth v. Spells**, 490 Pa. 282, 416 A.2d 470, 474 (1980) ("[W]here the appellant knowingly and intelligently decided not to testify, based on conversations with his lawyer, and the colloquy with the trial judge, we find no ineffectiveness.").

**Id.** at 755-56. In addition, we have held:

> In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," [the appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf."

**Commonwealth v. Todd**, 820 A.2d 707, 711 (Pa.Super. 2003).

Here, trial counsel stated on the record, "I have discussed with [Appellant] in detail that it is his determination as to whether or not he wants to testify. I believe in light of the defense strategy and his prior criminal record, we have reached a decision he chooses not to testify." N.T., 3/26/03, at 406. The trial court asked Appellant if that was correct, and he

- 20 -

responded in the affirmative. Thus, Appellant cannot demonstrate that counsel interfered with his ability to testify. ***Lawson***, ***supra***.

The record further reflects that trial counsel's advice to Appellant was clearly reasonable based on Appellant's prior convictions, and not because of Appellant's involvement in other criminal activity. N.T., 3/26/03, at 406. Indeed, Appellant had a prior record score of five and was previously convicted of burglary. ***See*** N.T., 4/7/03, at 5. Burglary is a *crimen falsi* conviction. ***Commonwealth v. Trippett***, 932 A.2d 188, 199 (Pa.Super. 2007). Appellant was twenty-two at the time of his conviction in the underlying matter, and was convicted of burglary as an adult. Hence, his burglary conviction was within ten years of the charges in this matter, and therefore admissible as *crimen falsi* evidence. ***See*** Pa.R.E. 609.

Finally, Appellant's claim that counsel informed him that he could be impeached based on a prior homicide incident is highly disingenuous and refuted by the record. Trial counsel actually successfully precluded evidence that Appellant shot another individual in a prior incident in which Appellant was also wounded. ***See*** Order of Court, 3/21/03. Accordingly, Appellant's issue is entirely without merit.

The final position Appellant advances on appeal is that trial counsel was ineffective for failing to investigate fingerprint evidence as well as conducting an insufficient investigation into his own defense witness, Desiree Portner. Ms. Portner was not called as a witness, although her proffered

testimony was that she witnessed another person commit the shooting. *See* N.T., 3/26/03, at 360. During sentencing, the trial court placed on the record the person Ms. Portner accused of committing the crime was in prison at the time of the incident and subsequently died prior to trial. *See* N.T., 4/7/03, at 12. Furthermore, Appellant does not adequately develop his claim. We therefore do not need to consider it further. *Steele*, *supra*.

Within his brief, Appellant does present argument relative to trial counsel's alleged failure to hire an expert witness on fingerprint evidence. Appellant maintains that counsel should have retained an expert to prove that fingerprints on the murder weapon were not his. However, no gun was recovered, and Appellant's issue below was that his trial counsel should have hired an expert to test fingerprint evidence recovered from the club and the van that transported the victim to the hospital. Fingerprint evidence from the club and van were of no evidentiary value in establishing who murdered the victim. Hence, this issue affords no relief to Appellant. Further, the failure to call an expert witness is governed by the same test delineated *supra* relative to the failure to call a witness. *See Chmiel*, 30 A.3d at 1143. Appellant has not indicated an expert that was available or willing to testify. This claim of ineffectiveness fails.

In sum, our review of the record supports the conclusion by the PCRA court and PCRA counsel that Appellant's appeal from the denial of post-conviction relief was wholly devoid of merit. The additional claims raised by

Appellant in his *pro se* brief are equally meritless or were not preserved for appeal. Thus, we affirm the PCRA court's order denying Appellant post-conviction relief.

Petition to withdraw denied. Order affirmed.

Judge Donohue files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/5/2014