426 A.2d 91

COMMONWEALTH of Pennsylvania, Appellee,

v.

Nicholas KARABIN, Jr., Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 21, 1980.

Decided Feb. 4, 1981.

Todd J. O'Malley, George V. Lynett, Scranton, for appellant.

Ernest D. Preate, Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On December 14, 1978 Nicholas Karabin, Jr., having been tried by a jury, was found guilty of murder of the first degree and of recklessly endangering the murder victim's wife. Post-trial motions were denied and sentences of life imprisonment on the murder conviction and one-to-two years on the recklessly endangering conviction were imposed, the sentences to run consecutively. This appeal followed from judgment of sentence on the murder conviction, wherein appellant, seeking a new trial, has advanced fourteen assignments of error in the proceedings below. After a careful review of the record and the briefs, we find no reversible error and affirm the judgment of sentence.

At the time of his arrest, appellant was a thirty-four year old high school teacher of chemistry and biology who also owned and operated a detective and security business. During the 1976–1977 school year appellant was experiencing marital difficulties. He was separated from his wife between April and June of 1977, and after a reconciliation, was separated again in February of 1978. Karabin's wife ultimately obtained a divorce on May 1, 1978. In December of 1977 appellant told his wife that she could not have a divorce and threatened to kill her.

During 1977 and 1978 Karabin engaged in a relationship with Leith Howell, one of his female students, then aged seventeen. Miss Howell lived with Karabin at his residence during May, June and early July of 1977. In July, when Karabin resumed living with his wife, he continued to see his former student friend from time to time. Karabin's wife

left again in February of 1978; Miss Howell moved back in with him.

Karabin told Miss Howell on or about January 6, 1978 that he wanted to kill his wife, and also told her that he intended to kill other people at random, so that his wife's murder would seem to be the work of a madman, and he would not be a suspect. In mid-February Karabin was upset by divorce proceedings which had been started by his wife, and he again told Miss Howell of his scheme to conduct random killings to divert attention from himself as a suspect in his wife's murder.

On March 17, 1978 Karabin told Miss Howell that he intended to begin the random murders that evening. After driving from Clarks Summit to Scranton with Miss Howell in the car, Karabin drove to a location near the North Scranton Expressway, parked his car, announced that he intended to shoot someone on the expressway, and left the car, armed with a shotgun and wearing a disguise consisting of a trenchcoat, a hat, glasses and a mustache. Shortly after Karabin left the car, Miss Howell heard two blasts from a shotgun. Karabin thereupon returned to the car and told Miss Howell that he had just shot someone from an embankment facing the North Scranton Expressway. As Karabin and Howell drove home, they listened on a police scanner in Karabin's car to a police radio broadcast concerning the discovery of a motorist on North Main Avenue at the Scranton Expressway who had just been shot.

On April 6, 1978 Karabin attempted another murder pursuant to his scheme to commit random slayings in the Scranton area. In the early morning hours, while Karabin was accompanied by Miss Howell and was on patrol related to his security business, Karabin parked his car a few blocks away from South Main Avenue in Scranton. Armed with a .22 calibre handgun, he left the car and, while Miss Howell remained in the car, attempted to kill a second victim. Upon returning to the car, Karabin announced that he had just shot a "drunk" near the west side post office. He also stated that he had been seen near the shooting by an

acquaintance, who asked Karabin if he had heard a shot. Karabin replied that he had not. Despite the fact that Karabin's victim was shot at the base of the skull, he lived and identified Karabin as the person who had been walking alongside him and disappeared just before the shooting, and had run from the scene. Miss Howell and the person who had seen Karabin in the vicinity also provided evidence of Karabin's criminal activity.

Other corroborating evidence submitted to the jury included inculpatory statements Karabin made to another inmate while in custody that he had shot two persons, and testimony from a former employee in Karabin's business that Karabin had solicited him to kill Karabin's wife on three occasions between March 17 and April 6, 1978 in exchange for a share in Karabin's business. Karabin's former wife also testified that Karabin threatened to kill her because she intended to divorce him.

Karabin denied responsibility for any of these crimes and attributed Miss Howell's testimony to her jealousy over his relationship with a third woman. Miss Howell testified that at first she did not believe that Karabin would carry out his plan to murder people selected at random and then his wife. She testified further that although she still loved the appellant, after the murders took place, she feared for her own safety and the safety of others. Accordingly, she gave a false statement to the police concerning the second shooting; she disposed of the .22 calibre handgun as Karabin instructed her; and she purchased .22 calibre shells as he requested.

Appellant asserts that his trial counsel was ineffective for not requesting an accomplice instruction regarding the testimony of Miss Howell. The thrust of such an instruction, according to appellant, is that the jury must consider Miss Howell's testimony "as coming from a polluted source, and that it must be carefully scrutinized," citing *Commonwealth v. Jones*, 213 Pa.Super. 504, 247 A.2d 624 (1968).

We conclude that trial counsel was not ineffective in failing to request an accomplice instruction. Rather, it

was a trial tactic of an obvious sort: Karabin's defense was that he did not perform the shootings. To request the accomplice instruction could derogate that defense. *See Commonwealth v. Sullivan*, 450 Pa. 273, 299 A.2d 608, *cert. denied* 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973); *Commonwealth v. Spells*, 490 Pa. 282, 416 A.2d 470 (1980). If the jury were to be told that Miss Howell's testimony was suspect because of her *complicity* in Karabin's crimes, the necessary implication would be that Karabin participated in the criminal activity of which he claims to be innocent. As we stated in *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1977), where it is apparent from the record that the actions claimed to constitute ineffectiveness were within the realm of trial tactics or strategy, we will not disturb the judgment below. It is apparent on this record that trial counsel's failure to request an accomplice instruction was strategically sound. Appellant's ineffectiveness claim, therefore, must fail.[1] *See Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

Judgment of sentence affirmed.

NIX, J., concurs in the result.

1. Appellant's other assignments of error are as follows: the verdict was contrary to the weight and sufficiency of the evidence and evidence of other criminal activity was erroneously admitted; the court erred in allowing the testimony of appellant's former wife; the court erred in allowing the testimony of a witness to be read in toto to the jury; the court erred in refusing appellant's request for an offer of proof on two occasions; the court erred in not ruling on appellant's motion to strike; the court erred in remarking that the testimony of a witness was admissible and that it may corroborate other testimony. In a supplemental brief, appellant raises the following points of error in an ineffectiveness framework: trial counsel and the Commonwealth were ineffective for failing to preserve a full and complete record; trial counsel were ineffective for failing to object to the court's instruction defining reasonable doubt and its instruction concerning the dignity of the law; trial counsel were ineffective for failing to object to admission of subsequent evidence of criminal activity; trial counsel were ineffective for failing to object to irrelevant and prejudicial statements concerning the victim's family life; trial counsel were ineffective for failing to pursue a trial strategy designed to afford a spirited defense; and trial counsel were ineffective for failing to file pretrial motions. We have thoroughly reviewed

the record and the briefs with respect to each of these assignments of error and fine no reversible error.