COMMONWEALTH of Pennsylvania, Appellee,

v.

Conrad CORLEY, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 4, 2002.
Filed Jan. 27, 2003.

---

**1110**

Michael R. Seward, Sunbury, for appellant.

Anthony J. Rosini, Assistant District Attorney, Sunbury, for Com., appellee.

Before: LALLY–GREEN, BENDER and KELLY, JJ.

BENDER, J.

¶ 1 Conrad Corley (Appellant) appeals from the judgment of sentence entered following convictions for aggravated indecent assault and indecent assault. Appellant claims that the verdict was against the weight of the evidence and that trial counsel rendered ineffective assistance. For the following reasons, we reverse.

¶ 2 Appellant was charged with rape, aggravated indecent assault, indecent assault, and sexual assault. Following a trial by jury, Appellant was found guilty of aggravated indecent assault and indecent assault. On January 6, 1998, the court sentenced Appellant to thirty-nine months to seven years' imprisonment. Appellant, through newly appointed counsel, filed a notice of appeal. However, counsel failed to file a brief and the appeal was dismissed. Thereafter, Appellant filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, requesting, *inter alia*, that the court grant a new trial or restore his appeal rights *nunc pro tunc*. The court held a hearing on February 7, 2001, at which Appellant and his trial counsel testified. During the hearing, Appellant's counsel questioned trial counsel regarding the issues that form the basis of Appellant's ineffective assistance of counsel claims in this appeal. Subsequently, the court denied Appellant's request for a new trial, but granted his request to restore his appeal rights *nunc pro tunc*.

¶ 3 Appellant, represented by Attorney Seward, then filed an appeal. Thereafter, Attorney Seward filed a petition with this Court seeking to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). *See also Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981). We

denied the petition and remanded the case with directions that Attorney Seward file either a proper *Anders* brief or an advocate's brief. On remand, the trial court appointed new counsel, John D. Broda, Esquire, who has filed an advocate's brief on Appellant's behalf, in which there are four questions for our review:

1. Whether the trial court erred in not finding that the verdict was against the weight of the evidence and denying Appellant a new trial?

2. Whether the trial court erred in not finding that the Commonwealth's evidence was so inconsistent, contradictory, indherently [sic] unreliable that the verdict cannot stand and the Appellant is entitled to be discharged?

3. Whether trial counsel was ineffective for failing to request that a "corrupt source" charge be given with respect to Paul Foulds a co-defendant?

4. Whether trial counsel was ineffective for failing to cross-examine a co-defendant regarding whether he expected to be treated more leniently with respect to the charges filed against him because he testified for the Commonwealth?

Brief for Appellant at 4.

 ¶ 4 In *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (1994), our Supreme Court stated that "[a]n allegation that the verdict is against the 'weight' of the evidence is a matter to be resolved by the trial court." 648 A.2d at 1190 (quoting *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167, 1170 n. 3 (1993)). A trial court may order a new trial only when the "verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Wallace*, 522 Pa. 297, 561 A.2d 719, 728 (1989). *See also Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728, 733 n. 3 (1987). "Moreover, appellate review of a weight claim consists of a review of the

trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. When reviewing the trial court's determination, we give the gravest deference to the findings of the court below. We review the court's actions for an abuse of discretion." *Commonwealth v. Foster*, 764 A.2d 1076, 1083 (Pa.Super.2000).

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury. Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1190 (1994) (quotation marks omitted).

¶ 5 At trial, the witnesses testified to the following facts. On the evening of January 26, 1996, the victim, Ann DeWalt, and her friend Kristy Engle, went to a bar named Tiffany's Lounge in Shamokin. N.T., 7/23/97, at 34. While there, they both had several drinks. *Id.* at 36–37. At some point in the evening, DeWalt and Engle became acquainted with Appellant and Paul Foulds, who were also both in the bar. *Id.* at 38–39. While the four were seated together Engle fell off of Foulds' lap and the bartender then ordered DeWalt and Engle to leave. *Id.* at 43.

¶ 6 Appellant and Foulds then encountered DeWalt and Engle in the parking lot outside the bar as the two were leaving. *Id.* at 44–45. According to DeWalt's testi-

mony, Foulds opined that DeWalt and Engle were too drunk to drive home and that he should drive them. *Id.* at 45. However, Foulds testified that the bartender asked him and Appellant to help DeWalt and Engle out of the bar, and when they were outside, DeWalt asked them if they "wanted to go for a ride and party a little bit." *Id.* at 227.

¶ 7 The contradictory testimony continued as to who was driving the van. DeWalt and Engle testified that Engle, who had driven herself and DeWalt to the bar earlier in the evening in her van, gave the keys of her van to Foulds. *Id.* at 45, 122. They also testified that when the four of them entered the van, Foulds sat in the driver's seat, Engle sat next to him in the front passenger seat, and Appellant and DeWalt sat behind them. *Id.* However, Foulds testified that Appellant first drove the van when they left Tiffany's Lounge, and that Foulds drove the van later after they stopped and switched seats. *Id.* at 228–30.

¶ 8 Although DeWalt and Engle testified that their intention was to go to a friend's home only three blocks away, Foulds did not take them there. *Id.* at 46, 123. DeWalt testified that shortly after they began driving, Appellant "attacked" her and began taking her clothes off; ultimately, he had forced sexual intercourse with her. *Id.* at 47, 49–51. DeWalt testified that during the involuntary intercourse, all she should do was cry and shake. *Id.* at 53. Eventually, she vomited. *Id.* at 53.

¶ 9 Engle testified that while they were driving around, she heard DeWalt crying, and when she turned around, she saw Appellant on top of DeWalt and both of them were partially disrobed. *Id.* at 124–25. Foulds testified that several times he heard DeWalt say "no" and that each time, Engle would turn around and staring yelling at Appellant "to get off" of DeWalt. *Id.* at 231. This occurred at least three times. *Id.* at 231–34. Foulds further testified that, "[Appellant] and the girl were apparently having intercourse or something, you know, I have no idea if there was penetration or not." *Id.* at 234. Foulds also testified that on more than one occasion he told Appellant to "get off" of DeWalt. *Id.* at 231, 237.

¶ 10 While the alleged events in the backseat were transpiring, according to Engle, Foulds then "hopped on top of her" and "she told him to get off." *Id.* at 126. Foulds testified that during this time, Engle "removed his pants," and began "giving [him] a hand job," and that while she did this, she took off her own pants and began masturbating. *Id.* at 234–35. Engle testified that at some point, she took over the driving, and "dropped [Appellant and Foulds] off" at Tiffany's Lounge. *Id.* at 127. DeWalt did not report the incident to the police until four days later. *Id.* at 68,

¶ 11 As stated above, the jury convicted Appellant of aggravated indecent assault and indecent assault. The trial court found that based on its "thorough review of the trial testimony" that there was "no reason to disturb the jury's decision." Trial Court Opinion, 4/9/98, at 6. The facts of this case are disturbing and somewhat bizarre. And although Appellant directs us to inconsistencies in the testimony such as how much alcohol DeWalt and Engle drank at that bar, who was driving the van at various points in the evening, and the particular arm that Appellant used to disrobe DeWalt, we conclude that notwithstanding these inconsistencies in the testimony, the record supports the trial court's decision not to grant a new trial and, accordingly, there was no abuse of discretion.

¶ 12 In the second question presented for our review, Appellant only reiterates the arguments advanced in his first argument, and claims that "he should be dis-

charged because the evidence offered by the Commonwealth in being so unreliable did not support the verdict." Brief for Appellant at 13. For the reasons discussed above, we find this claim to be without merit.

¶ 13 In the third and fourth questions presented for our review, Appellant claims that trial counsel rendered ineffective assistance.[1] When reviewing an ineffective assistance of counsel (IAC) claim, we presume that counsel is effective and place the burden on an appellant to prove otherwise. *See Commonwealth v. Williams,* 524 Pa. 218, 570 A.2d 75, 81 (1990). In order for an appellant's IAC claim to succeed, he or she must establish: "(1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness." *Commonwealth v. Wallace,* 555 Pa. 397, 724 A.2d 916, 921 (1999).

¶ 14 First, Appellant claims that trial counsel rendered ineffective assistance by failing to request a corrupt source instruction for Foulds' testimony, an alleged accomplice. "It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so." *Commonwealth v. Sisak,* 436 Pa.

262, 259 A.2d 428, 430 (1969). "An accomplice charge is required only when the evidence permits an inference that the witness was an accomplice. The justification for the instruction is that an accomplice may inculpate others out of a reasonable expectation of leniency." *Commonwealth v. Gainer,* 397 Pa.Super. 348, 580 A.2d 333, 337 (1990) (citations omitted).

¶ 15 However, as the Commonwealth argues, when such an instruction would contradict or be in derogation of the theory of defense, then there exists a reasonable basis for trial counsel's decision not to request the instruction. *See Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1182 (1999); *Commonwealth v. Karabin,* 493 Pa. 249, 426 A.2d 91, 93 (1981). In the instant case, Appellant's defense was that he did not have sexual intercourse with DeWalt. He testified so at trial. N.T., 7/21/97, at 335. An accomplice instruction regarding the testimony of Foulds would, therefore, have derogated Appellant's defense because it would have implicated Appellant in a crime against DeWalt. Accordingly, Appellant's trial counsel had a reasonable basis for not requesting the instruction. *See Williams,* 732 A.2d at 1182; *Karabin,* 426 A.2d at 93.

¶ 16 In the fourth question presented for our review, Appellant claims that his trial counsel rendered ineffective assistance by not cross-examining Foulds as to whether he had an expectation of leniency as a result of his testifying

1. This is technically a direct appeal from a judgment of sentence wherein Appellant has presented IAC claims and, therefore, we must address the recent decision of our Supreme Court in *Commonwealth v. Grant,* — Pa. ——, 813 A.2d 726 (2002), which announced a general rule that an appellant "should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738. The court's rationale for so holding was its concern that an appellate court is sometimes handicapped when it attempts to review an IAC claim on an undeveloped record. *See id.* at 733–38. However, in this case, Appellant filed a PCRA petition raising the IAC claims that we are here addressing, and the trial court already held a PCRA hearing during which witnesses gave testimony regarding trial counsel's alleged ineffectiveness. Accordingly, we conclude that in this procedural context it is appropriate for us to review Appellant's IAC claims.

against Appellant. Prior to the Commonwealth's direct examination of Foulds, there was an extensive colloquy between trial counsel, the prosecutor, the trial court, Foulds, and Foulds' attorney. The purpose of the colloquy was to determine whether there was a plea agreement between Foulds and the Commonwealth, and whether Foulds understood that he could remain silent pursuant to his Fifth Amendment right against self-incrimination. N.T., 7/23/97, at 206–13. Foulds' knowing waiver of his right to remain silent was significant to the trial court because Foulds was also facing charges arising from the facts of the instant case. *Id.* at 206–07.

¶ 17 During this colloquy, the court questioned Foulds regarding his knowledge of his right to remain silent. The court also questioned Foulds' attorney to ensure that he had advised Foulds of his right to remain silent. At the conclusion of this questioning, the court was satisfied that Foulds had made a knowing decision to testify despite the fact that his testimony could be used against him in the impending criminal proceedings against him arising from the facts about which he was going to testify. *Id.* at 207–08. Regarding the possible existence of a deal between Foulds and the Commonwealth, the court twice stated that it had concluded that there was no plea agreement between Foulds and the Commonwealth. *Id.* at 211, 213. Nonetheless, when asked whether he had been advised that his testimony against Appellant would be given consideration in any sentence that Foulds may receive, Foulds responded, "Yes." *Id.* at 209. Foulds' attorney explained Foulds' affirmative response as follows:

> Your Honor, if I may, what Mr. Foulds indicated in terms of the receipt of favorable treatment was not something that was manufactured or delivered by the District Attorney's Office. That was something that came up in the course of attorney-client discussions. And I want to caution Mr. Stuck [ (Appellant's trial counsel) ] that if he does intend to delve into the attorney-client relationship and discussions that dealt specifically with issues involving this matter that did not involve the District Attorney's Office, I will invoke the attorney-client privilege on behalf of my client in open court.

*Id.* at 209–10. Appellant's trial counsel then responded that he would not pursue this matter. *Id.* at 210.

¶ 18 Appellant now claims that trial counsel rendered ineffective assistance by not questioning Foulds regarding whether an expectation of leniency was his motivation for testifying. Appellant argues that even if Foulds were to have invoked the attorney-client privilege in response to such an inquiry, Appellant's trial counsel was ineffective for not making Foulds do so in the presence of the jury, as this could have adversely affected Foulds' credibility in their eyes. In support of this argument, Appellant cites to *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986), and *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391 (1987).

¶ 19 In *Evans*, our Supreme Court was asked to decide whether the trial court erred in prohibiting defense counsel from cross-examining a Commonwealth witness regarding the witness's expectation of leniency for pending criminal matters even though there was no agreement between the witness and the prosecution. *Evans*, 512 A.2d at 626. The court reversed, and enunciated a new rule that held that a criminal defendant may impeach a witness by showing bias "because of the expectation of leniency in some pending matter even when no promises have been made." *Id.* at 632. In so holding, the court reasoned as follows:

[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, **the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.**

The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, **but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise a doubt in the mind of the jury as to whether the prosecution witness is biased.** It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.

*Id.* at 631–32 (footnotes omitted) (emphasis added). Thus, Appellant has satisfied the first prong of showing ineffective assistance, as there is clearly arguable merit to his claim that trial counsel should have questioned Foulds regarding his expectation of leniency.

¶ 20 As Appellant argues, there could have been no reasonable basis for trial counsel's decision not to so question Foulds, as attacking Foulds' credibility would only have been beneficial to Appellant in light of the inculpatory nature of Foulds' testimony. And even had Appellant's trial counsel expected that Foulds would invoke the attorney-client privilege, it was nonetheless proper for trial counsel to make such an inquiry of Foulds. *See*

*Sims*, 521 A.2d at 395–96. In *Sims*, the court stated the following regarding the cross-examination of a witness who intends on invoking the attorney-client privilege:

Forcing that witness to invoke the statutory privilege in the presence of the jury in no way undermines the underlying policy supporting that privilege. Once the privilege is recognized and upheld, the privileged communication remains inviolate. However, on the other hand, **the invocation of that privilege before the jury could have reasonably provided the basis for that tribunal to question the accusations made by that witness against the accused.** The very heart of cross-examination is to provide the opportunity to challenge the credibility and reliability of opposing witnesses.

. . .

**To insulate such a witness from having to invoke his privilege in the jury's presence, as did the trial court in this case, unfairly bolstered the credibility of a witness** whose testimony was crucial to the success of the prosecution.

*Id.* at 395–96 (footnote omitted) (emphasis added). Thus, even if Foulds had invoked the privilege, the invocation of the privilege in the jury's presence could have caused them to question the substance of Foulds' testimony. Therefore, there was no reasonable basis for trial counsel's failure to question Foulds on this issue.

¶ 21 Finally, we find trial counsel's failure to impeach Foulds by showing his bias prejudiced Appellant in that but for trial counsel's omission, there is a reasonable probability that the outcome of Appellant's trial could have been different. Initially, we note that had evidence of Foulds' expectation of leniency been introduced, it would have been the sole evidence to show his bias, i.e., the evidence would not have been redundant. N.T., 7/23/97, at 215–60.

Furthermore, in the jury's eyes, Foulds apparently had no bias against Appellant as he was supposedly his friend. This is significant because the only other eyewitnesses to Appellant's alleged crime were DeWalt and Engle, two individuals who the jury may have suspected of bias. Thus, when Foulds testified and corroborated many of the allegations set forth by DeWalt and Engle, it was crucial that trial counsel attempt to show that Foulds too was biased against Appellant. Under these circumstances, we conclude that if trial counsel had impeached Foulds by showing his bias, there is a reasonable probability that the outcome of the trial would have been different.

¶ 22 Judgment of sentence **RE-VERSED.**