J-S51012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRANDON LAMONT MCPHERSON, | |
| Appellant | No. 2224 MDA 2013 |

Appeal from the PCRA Order December 11, 2013
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0001609-2007

BEFORE:  BOWES, OTT, and MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 21, 2014**

Brandon Lamont McPherson appeals from the December 11, 2013 order denying him PCRA relief.  We affirm.

On November 14, 2008, Appellant was found guilty by a jury of attempted murder, aggravated assault, and two counts each of conspiracy and reckless endangerment.  While the trial transcript is not contained in the certified record, we outline the facts of the crimes as articulated during Appellant's direct appeal:

> In the early evening hours of January 4, 2007, Appellant McPherson and Angel Serrano decided to shoot rival drug dealers.  That day McPherson and Serrano had met at Brent Murray's house in downtown, Lancaster City.  Sheena Owens and Theresa Punchos, McPherson's and Serrano's girlfriend, respectively, remained at the house while McPherson and Serrano went to buy marijuana.

[McPherson and Serrano] returned to the house angry and upset because rival drug dealers had kicked them off the block where McPherson and Serrano tried to buy the drugs. They armed themselves with guns, left the house again, and went to the corner of Beaver Street and West Andrew Street. McPherson and Serrano opened fire on the group of males from earlier. At the same time, B.P., a seven year old girl, B.P.'s mother, and two cousins were across the street walking home from the store. A bullet struck B.P. in the back. An ambulance was called to the scene.

If not for the extreme efforts of the EMT at the scene, and doctors and medical staff at the hospital, B.P. would have died. The EMT kept her alive en route to the hospital by sticking his finger in the bullet hole to stop the bleeding. Bone fragments and travel of the bullet caused injuries to her ribs, lungs, and heart. At the hospital, doctors had to shock her heart to get it beating again.

McPherson and Serrano fled the shooting scene. They ran back to Brent Murray's house, changed clothes, and called for a cab. McPherson, Serrano, Murray, Owens, and Punchos took a taxi to a motel where they stayed the night. McPherson and Serrano bragged and boasted about shooting at the alleged drug dealers in front of the others. McPherson, Serrano, Owens and Punchos then went to the house of Owens' mother, where McPherson hid out. Upon returning to Lancaster, Serrano sought money from his step-father and girlfriend. Serrano left for Florida; he stayed with another girlfriend, Nicole Fedorek. While there, Serrano manipulated various women in an effort to obtain money and build an alibi.

On January 29, 2007, McPherson was detained in Columbia Borough and subsequently transported to the City of Lancaster Police Department pursuant to an open arrest warrant. A silver revolver connected to the B.P. shooting was recovered on January 30, 2007. Serrano was arrested in Florida on February 14, 2007.

*Commonwealth v. McPherson*, 4 A.3d 206 (Pa.Super. 2010) (unpublished

memorandum at 1-3) (quoting Trial Court Opinion, 7/2/09, at 1-2).

Following his convictions, Appellant was sentenced to twenty-five to sixty

years incarceration.  On May 26, 2010, we affirmed.  *Id*.  On November 10, 2010, Appellant filed a timely PCRA petition seeking reinstatement of his right to file a petition for allowance of appeal.  He was granted the requested relief, and our Supreme Court denied review on October 25, 2011.

Appellant filed his present PCRA petition on May 2, 2012.  Counsel was appointed and filed an amended petition, which averred that trial counsel was ineffective for failing to seek a corrupt or polluted source jury instruction as to Commonwealth witnesses Sheena Owens and Brent Murray.  This matter proceeded to an evidentiary hearing on October 2, 2013, where trial counsel, Roger C. Renteria, Esquire testified.  Mr. Renteria did not recall whether he had asked for a corrupt source charge for the two witnesses.  He indicated that, in retrospect, it was unlikely that he had requested such an instruction since "it didn't seem it was a relevant instruction at that point due to the fact that . . . the Commonwealth had not produced any evidence saying that they were active participants or that they had solicited" the crime.  N.T. PCRA Hearing, 10/2/13, at 7-8.  Mr. Renteria also noted that he raised "a self-defense argument" so that a request for such a charge would have been inconsistent with that defense.  *Id*. at 8.

Appellant's PCRA petition was denied on December 11, 2013.  The trial court concluded that trial counsel was not ineffective for failing to request the charge in question since the instruction was not warranted based upon the trial evidence and since trial counsel had a strategic basis for his decision.  This appeal followed.  Appellant's issue on appeal is as follows:

[I.] Did trial counsel provide ineffective assistance of counsel to a degree that so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken placed by failing to request a corrupt and polluted source jury instruction prejudicing the defendant [a]ffecting the outcome of his trial.

Appellant's brief at 2.

Our standard and scope of review in the present context is as follows:

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa. 2013). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 131 (2012. "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Spotz*, 610 Pa. 17, 18 A.3d 244, 259 (2011) (citation omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Id.*

*Commonwealth v. Medina*, 92 A.3d 1210, 1214-15 (Pa.Super. 2014).

Herein, Appellant levels a challenge to trial counsel's stewardship, which is subject to the following principles:

[C]ounsel is presumed effective, and the burden of proving ineffectiveness rests on [the defendant]. The test for counsel ineffectiveness is, in substance, the same under both the Pennsylvania and federal Constitutions: it is the performance and prejudice test set forth in [*Strickland v. Washington*, 466 U.S. 668 (1984). In Pennsylvania, we have divided the performance element into two sub-parts dealing with arguable merit and reasonable strategy. Thus, to prove his trial counsel was ineffective, [an appellant] must demonstrate that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered prejudice as a result.

- 4 -

*Commonwealth v. Burno*, 2014 WL 2722758, 12 (Pa. 2014) (citations omitted). "Where the [PCRA] petitioner fails to meet any aspect of this test, his claim fails." *Commonwealth v. Henkel*, 90 A.3d 16, 30 (Pa.Super. 2014).

Appellant's sole claim on appeal pertains to the absence of a corrupt or polluted source instruction as to Commonwealth witnesses. "A corrupt source instruction advises the jury that if it finds that a certain witness who testified against the defendant was an accomplice of the defendant in a crime for which he is being tried, then the jury should deem that witness a 'corrupt and polluted source' whose testimony should be considered with caution." *Commonwealth v. Collins*, 957 A.2d 237, 262 (Pa. 2008). Such an instruction "is warranted only in cases in which there is sufficient evidence to present a jury question with respect to whether the witness is an accomplice." *Id*.; *see also Commonwealth v. Hanible*, 30 A.3d 426 (Pa. 2011).

As noted by trial counsel and the PCRA court in this case, there was insufficient evidence to support a finding that either Owens or Murray were accomplices to Appellant and Serrano. The definition of an accomplice is contained in 18 Pa.C.S. § 306(c), which states in pertinent part that someone is considered an accomplice if, "with the intent of promoting or facilitating the commission of the offense," that person either "solicits such other person to commit it or if the person "aids or agrees or attempts to aid

such other person in planning or committing it." 18 Pa.C.S. § 306(c) (18 Pa.C.S. § 306(c)(1)(i-ii). Under this statute, "accomplice liability requires evidence that the person: (1) intended to aid or promote the substantive offense; and (2) actively participated in that offense by soliciting, aiding, or agreeing to aid the principal." **Collins**, **supra** at 263.

Instantly, there was insufficient proof that either witness had such an involvement in the crime. They did not participate in the initial altercation and were merely waiting for Appellant and Serrano when the latter two men attempted to buy drugs. Neither witness encouraged or participated in the activities of Appellant and Serrano, and there was no proof that they solicited, aided, or agreed to aid those two actors in shooting at the recalcitrant drug peddlers. Indeed, there is no indication that the witnesses even had advance knowledge that Appellant and Serrano would start randomly shooting at the group of men. They fled with the two shooters, and one witness hailed a taxicab, as instructed by the perpetrators. These type of activities are insufficient to warrant any finding that they were accomplices in the shooting. "One merely present at the crime scene is not an accomplice . . . nor is one who merely helps an offender try to escape arrest or punishment an accomplice[.]" **Collins**, **supra** at 263. Hence, Owens and Murray were not accomplices.

Additionally, trial counsel articulated that he had a reasonable basis for not requesting the charge. Appellant's claim was that he acted in self-

defense. By requesting a corrupt source instruction, counsel would have been admitting that there was advance planning of the shooting among the five people in Murray's home. As the corrupt and polluted source instruction would have been inconsistent with Appellant's proffered defense, counsel had a strategic basis for not seeking it. *See Commonwealth v. Karabin*, 426 A.2d 91 (Pa. 1981), and *Commonwealth v. Johnson*, 437 A.2d 1175 (Pa. 1981), holding that trial counsel had a reasonable strategy for not asking for the corrupt and polluted source charge where the instruction was inconsistent with the defendants' position that they had not committed the crimes in question.

As the PCRA court's finding that trial counsel was not ineffective is not error, we must affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2014

- 7 -