J-S57022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MILIQUE K. WAGNER | : | |
| | : | |
| Appellant | : | No. 2258 EDA 2017 |

Appeal from the PCRA Order June 16, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0000127-2011

BEFORE: PANELLA, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY PLATT, J.: **FILED DECEMBER 18, 2018**

Appellant, Milique K. Wagner, appeals *pro se* from the order denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, without a hearing. We affirm.

We take the following facts and procedural history from this Court's January 29, 2015 memorandum in this matter, our February 6, 2015 memorandum in co-defendant Reafeal Fields' appeal, and our independent review of the certified record. On the morning of February 11, 2010, Appellant's co-defendants, Kelvin Bryant and Reafeal Fields, murdered Michael Smith. The men told Amin Payne that they killed Smith over drug territory. (***See Commonwealth v. Fields***, 2015 WL 7572570, unpublished memorandum, at *1 (Pa. Super. filed Feb. 6, 2015)).

_____
* Retired Senior Judge assigned to the Superior Court.

Later that evening, Appellant, Bryant, and Payne congregated at the apartment of Bryant's mother, Debra Stumbler. Stumbler's boyfriend, James Herman Adams, also was present. Appellant and Bryant openly carried guns around throughout the evening while Payne packaged drugs. Bryant and Appellant left the apartment immediately after Bryant received a phone call. Payne followed them shortly thereafter.

Payne testified that when he exited the apartment, he witnessed Appellant and Bryant talking with the victim, Braheem King, and then shoot him. In a police interview, Adams told officers that minutes after the men left the apartment, he heard shooting.

Philadelphia Police Officers Daniel Stevens and Justin Rios were on duty near the shooting location when they received a dispatch about shots being fired, and that two black males in hoodies were seen running from the area. Officer Stevens saw Appellant and Bryant running approximately three-and-a-half blocks from the murder scene. Appellant stopped when Officer Rios yelled that the men do so. Bryant did not. Police transported Appellant to the police department for investigation, and then released him.

On February 20, 2010, Adams went to the homicide division to give a statement about the February 11, 2010 shooting. Adams saw Payne while at the station. On March 27, 2010, Payne shot Adams in the stomach at close range.

- 2 -

On February 24, 2010, an arrest warrant was issued for Appellant, who had fled the jurisdiction. On September 29, 2010, police apprehended him in Wilkes Barre; he was using an alias.

On January 28, 2013, a consolidated trial commenced against Appellant, Bryant, and Fields. The jury was death-qualified because Bryant faced the possibility of the death penalty. On February 6, 2013, a jury convicted Appellant of murder in the first degree, criminal conspiracy, and possessing an instrument of crime for the murder of King with co-defendant, Bryant.[1] On the same day, the court sentenced Appellant to a term of life imprisonment on the murder conviction, with an aggregate term of incarceration of not less than five nor more than ten years' on the remaining convictions. On May 21, 2013, the court denied his post-sentence motions. A panel of this Court affirmed the judgment of sentence on January 29, 2015, and our Supreme Court denied further review on October 13, 2015. (*See Commonwealth v. Wagner*, 118 A.3d 457 (Pa. Super. filed Jan. 29, 2015) (unpublished memorandum), *appeal denied*, 126 A.3d 1285 (Pa. 2015)).

---

[1] The jury also convicted Appellant's co-defendants, Bryant and Fields, for the murder of Smith. In a separate trial, a jury convicted Payne of robbery, aggravated assault, and related charges, for his shooting of Adams.

On December 2, 2015, Appellant timely filed the instant PCRA petition, *pro se*. Appointed counsel filed a **Turner**/**Finley**[2] "no-merit" letter and petition to withdraw on January 12, 2017. On March 20, 2017, the court served Appellant with Rule 907 notice of its intent to dismiss the petition without a hearing. **See** Pa.R.Crim.P. 907(1). Appellant responded on April 5, 2017, and, on June 13, 2017, counsel filed a supplemental **Turner**/**Finley** letter addressing the issues raised in Appellant's response to the court's notice. On June 16, 2017, the court dismissed the PCRA petition and granted counsel's petition to withdraw. Appellant timely appealed *pro se*.[3]

Appellant raises six questions for our review.

(a)    [Whether the PCRA court properly found that t]rial counsel was [not] ineffective under the Sixth and Fourteenth Amendment to the United States Constitution and Article 1, [Section] 9 of the Pennsylvania Constitution when he failed to request "corrupt and pollute[d] source charge[,]" denying Appellant of state and federal due process[?]

(b)    [Whether the PCRA court properly found that t]rial counsel was [not] ineffective for failing to request *crimen falsi* instruction for Commonwealth witness Amin Payne who had a conviction for robbery denying Appellant state and federal due process[?]

(c)    [Whether the PCRA court properly found that t]rial counsel was [not] ineffective for failing to request "other crimes evidence" instruction[,] denying Appellant due process under the Pennsylvania and federal constitution[s?]

_____

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[3] Pursuant to the court's order, Appellant filed a timely statement of errors complained of on appeal on July 20, 2017. The court filed an opinion on December 27, 2017. **See** Pa.R.A.P. 1925.

- 4 -

(d)    [Whether the PCRA court properly found that t]rial counsel was [not] ineffective for failing to object to the erroneous instruction by the trial court that allowed the jury to consider an unsigned and unadopted statement as substantive evidence[,] denying Appellant state and federal due process[?]

(e)    [Whether the PCRA court properly found that t]rial counsel [did not] render[] ineffective assistance of counsel in failing to file a motion to sever Appellant's trial from that of co-defendant Kelvin Bryant who was facing capital punishment[?]

(f)    [Whether the PCRA court properly found that] PCRA counsel was [not] ineffective for failing to argue that the cumulative effect of trial counsel's errors fundamentally denied him a fair trial[?]

(Appellant's Brief, at 4).

"Our standard of review for issues arising from the denial of PCRA relief is well-settled.  We must determine whether the PCRA court's ruling is supported by the record and free of legal error."  **Commonwealth v. Bush**, ___ A.3d ___, 2018 WL 4782153, at *1 (Pa. Super. filed Oct. 4, 2018) (citation omitted).

Here, all of Appellant's issues allege the ineffective assistance of counsel.  Our standard of review of such allegations is long-settled.

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.  To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

- 5 -

*Commonwealth v. Smith*, 181 A.3d 1168, 1174-75 (Pa. Super. 2018),

*appeal denied*, 193 A.3d 344 (Pa. 2018) (citation omitted).

Instantly, Appellant's first three issues challenge trial counsel's failure

to request specific jury instructions. (***See*** Appellant's Brief, at 4, 11-26).

These issues lack merit.

> It is well settled that whether to request additional points for charge is one of the tactical decisions within the exclusive province of counsel. We should not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial. Rather, we should scrupulously follow the presumption that attorneys act in the interests of their clients, and insist that Appellant meet his burden of proving that his attorneys had no reasonable basis for their action.

*Commonwealth v. Lawrence*, 165 A.3d 34, 44 (Pa. Super. 2017) (citations

and quotation marks omitted).

In his first issue, Appellant maintains that counsel erred in failing to

request a corrupt and polluted source charge. (***See*** Appellant's Brief, at 11-

17). Specifically, he argues that eyewitness Payne "could have been

considered by the jury as an accomplice," thus requiring the polluted or

corrupt source instruction. (***Id.*** at 13). This issue lacks merit.

> [T]he standard charge for accomplice testimony [is] commonly referred to as the corrupt and polluted source charge. [I]n any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution. . . . If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony.

*Lawrence*, *supra* at 44 (citation, footnote, and quotation marks omitted).

However, where counsel's trial strategy is to argue that the defendant is not involved in the crime, counsel has a reasonable basis for not requesting a corrupt source instruction. **See Commonwealth v. Williams**, 732 A.2d 1167, 1182 (Pa. 1999) (finding trial counsel not ineffective for failing to request accomplice instruction where "[it] would have contradicted [] defense that [appellant] was [not] present at the scene of or involved in any way in the killing."); **Commonwealth v. Karabin**, 426 A.2d 91, 93 (Pa. 1981) (rejecting ineffectiveness claim for failing to request corrupt source instruction because it would have implied defendant was accomplice in criminal activity of which he claimed to be innocent).

Here, counsel's defense theory was that Appellant was not involved in any way with King's murder, emphasizing that the only eyewitness was Payne, Appellant did not flee or resist when approached by police officers, and that no direct evidence linked him to the killing (**See** N.T. Trial, 2/05/13, at 225, 229-31, 234). Therefore, he had a reasonable basis not to request a corrupt and polluted source instruction. **See Williams**, **supra** at 1182; **Karabin**, **supra** at 93. Hence the record supports the PCRA court's denial of Appellant's claim of ineffective assistance of counsel on this basis. **See Smith**, **supra** at 1174-75; **Lawrence**, **supra** at 44. Appellant's first issue lacks merit.

In his second claim, Appellant argues that trial counsel was ineffective for failing to request a *crimen falsi* instruction for Payne, who had been

convicted of robbery. (**See** Appellant's Brief, at 18-21). This issue does not merit relief.

Pursuant to Pennsylvania Rule of Criminal Procedure 609(a), "[f]or the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime . . . must be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a). "Robbery is a *crimen falsi* offense." ***Commonwealth v. Bullock***, 948 A.2d 818, 828 (Pa. Super. 2008), *appeal denied*, 968 A.2d 1280 (Pa. 2009) (citation omitted).

In this case, the Commonwealth questioned Payne about his robbery conviction and Payne repeatedly admitted its commission. (**See** N.T. Trial, 2/01/13, at 189, 192-93). Therefore, the jury was advised of Payne's criminal history involving a *crimen falsi*. **See Bullock**, **supra** at 828; Pa.R.E. 609(a).

Also, Appellant has failed to prove that he was prejudiced. First, the jury was aware of Payne's criminal history, and the court instructed it about its duty to weigh evidence and consider credibility, including, among other factors, whether the individual has an interest in the outcome of the case. (**See** N.T. Trial, 2/01/13, at 189, 192-93; N.T. Trial, 2/06/13, at 29-30). Moreover, there was sufficient evidence independent of Payne's testimony that supported Appellant's conviction. For example, there was evidence that he and co-defendant Bryant were carrying guns in the apartment, they left the home without Payne immediately prior to the shooting, Appellant was with Bryant in the area of the shooting right after its commission, he fled to the

Scranton/Wilkes Barre area, and he provided false identification to law enforcement personnel at the time of his arrest. (*See* N.T. Trial, 1/30/13, at 38-39, 50, 57-59; N.T. Trial, 2/01/13, at 42, 47; Commonwealth's Exhibit 13-A, Adams Investigative Interview Record, 2/21/10, at 1-2).

Therefore, based on the court's instruction as a whole, and reviewing the certified record, Appellant has failed to prove that he was prejudiced by the lack of a specific *crimen falsi* instruction. **See Smith**, **supra** at 1174-75; **Lawrence**, **supra** at 44. His second issue lacks merit.

In his third claim, Appellant maintains that "counsel was ineffective for failing to request the 'other crimes evidence' instruction[.]" (Appellant's Brief, at 22). This issue lacks merit.

It is well-settled that:

> Evidence of one crime is generally inadmissible against a defendant being tried for another crime. [W]hile generally not admissible to prove bad character or criminal propensity, evidence of crimes, wrongs, or other acts is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect. [**S**]**ee** [] Pa.R.E. 404(b). . . . When the trial court admits evidence of a defendant's other bad acts, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose.

**Commonwealth v. Crispell**, 193 A.3d 919, 936-37 (Pa. 2018) (case citations omitted).

Here, although Appellant posits that, "throughout [his] trial, the prosecution admitted testimony that the defendant's (sic) were drug dealers, who killed over drug turf[,]" he fails to identify any testimony about **his** prior

crimes, wrongs or acts. (Appellant's Brief, at 23; *see id.* at 22-26).

Specifically, the PCRA court explains:

> . . . [Appellant's] only examples from the record concerned acts of violence and intimidation by co-defendant Bryant and by witness Payne against witness Adams. (*See* [Appellant's] Response to 907 Notice, 4/[0]7/17, at 11-13). As these incidents only concerned co-defendant Bryant and witness Payne, [Appellant] failed to demonstrate how references to these incidents prejudiced the jury's evaluation of the evidence against [Appellant] individually.

> Even assuming that the record indicated that the Commonwealth made some suggestion that [Appellant] was guilty by his association with Bryant and Payne concerning these incidents, th[e c]ourt's instructions were clear that the jury was to evaluate the evidence against each defendant individually, and that the jury should determine the guilt or innocence of each defendant based on the evidence presented at trial and not on the basis of any other factor[.]

(PCRA Ct. Op., at 16).

Based on the foregoing, and our independent review of the record, the PCRA court properly found that counsel was not ineffective for failing to request an other crimes, wrongs, or acts, jury instruction where there was no such evidence against Appellant. Moreover, although such evidence was admitted against Appellant's co-defendants, the court instructed the jury to evaluate the evidence pertinent to each defendant when reaching its verdict, which we presume that the jury did. *See Commonwealth v. Messersmith*, 860 A.2d 1078, 1092 (Pa. Super. 2004), *appeal denied*, 878 A.2d 863 (Pa. 2005) ("[T]he law presumes that juries follow the court's instructions.") (citations omitted). Therefore, Appellant has failed to meet his burden to

plead and prove counsel's ineffectiveness. *See Smith*, *supra* at 1174-75; *Lawrence*, *supra* at 44. Appellant's third issue does not merit relief.

In his fourth allegation of error, Appellant asserts that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding the unsworn, unadopted statement given by Payne to investigators. (*See* Appellant's Brief, at 27-30). Appellant claims that the court's instruction misinformed the jury that they could consider this statement as substantive evidence. (*See id.* at 27). Appellant's claim does not merit relief.

The Pennsylvania Rules of Evidence establish that prior inconsistent statements may be used only to impeach a witness, unless it was given under oath, is a writing signed and adopted by the declarant, or is a verbatim, contemporaneous electronic recording. *See* Pa.R.E. 803.1(1). "[W]here . . . the witness does not admit making the inconsistent statement, it may be proved by extrinsic evidence, such as the testimony of the person to whom the statement was made." *Commonwealth v. Brown*, 448 A.2d 1097, 1103 (Pa. Super. 1982).

Here, Payne testified at trial that he shot Adams during a robbery. (*See* N.T. Trial, 2/01/13, at 182-83). However, in his January 25, 2013 statement, which he did not sign and adopt, he told detectives that he shot Adams because Bryant had directed him to do so. (*See id.* at 195).

Because Payne denied making the prior inconsistent statement, the Commonwealth presented the testimony of Officer Golphin, who read the

contemporaneously typed record of the questions and answers from the January 25, 2013 interview with Payne. (*See* N.T. Trial, 2/04/13, at 97-103). Officer Golphin testified that, although Payne declined to sign the transcript, Payne read it and said that it correctly reflected what had been said. (*See id.* at 103).

The court provided two cautionary instructions to the jury about the treatment of the unsigned January 25, 2013 statement. First, immediately after Payne's testimony, it stated that Payne's unsigned January 25, 2013 statement could only be used for impeachment, "but it may not be used for the truth of anything that was said there." (N.T. Trial, 2/01/13, at 314-15). Second, during the final charge, after exhaustively explaining that prior inconsistent statements can be used as substantive evidence only if signed and adopted by the declarant, (*see* N.T. Trial, 2/06/13, at 42-46), the court cautioned the jury that, because the January 25, 2013 statement was not signed and adopted, it must be treated differently:

> Now, let me caution you, because you also heard about a statement, and that was from Amin Payne, which was not signed and adopted. This is the statement that was taken by the DA's detectives on January 25, 2013. If you find that Mr. Payne said those things, you may use it. And if you have a question as to whether he said those things at all, then you cannot use that statement to prove otherwise, or it does not come in as substantive evidence for the truth of the matter asserted there.

(*Id.* at 46).

Although the court used the words, "substantive evidence," reading the instructions as a whole, we conclude this was not error. The court already

- 12 -

had expressly advised that the jury only could consider the statement for impeachment, which we presume that the jury followed. *See Messersmith*, *supra* at 1092. Therefore, considering the instructions as a whole, when the court instructed the jury that it "may use" the June 25, 2013 statement if it believed Payne made it, we presume that the jury interpreted this to mean that it could be used as impeachment evidence. (*Id.*).

Therefore, Appellant failed to prove that his underlying claim had arguable merit, and we will not find counsel ineffective. *See Smith*, *supra* at 1175 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted). Appellant's fourth issue lacks merit.

In his fifth issue, Appellant argues that counsel was ineffective for failing to file a motion to sever his trial from that of capital co-defendant, Bryant. (*See* Appellant's Brief, at 31-35). Specifically, he maintains that counsel's failure to file a motion to sever the trials prejudiced him because consolidation "served to c[o]nfuse and mislead the jury." (*Id.* at 31). This issue lacks merit.

We are guided by the following legal principles. It is long-settled that a motion to sever is addressed to the sound discretion of the trial court. *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1282 (Pa. Super. 2004) (citation omitted). Pursuant to Pennsylvania Rule of Evidence 583, "[t]he court may order separate trials of . . . defendants . . . if it appears that any party may be prejudiced by . . . defendants being tried together." Pa.R.E.

- 13 -

583. "[W]hen defendants have conflicting versions of what took place, the truth may be more easily determined if all are tried together. Where conspiracy is charged, joint trials are advisable." *Commonwealth v. Rivera*, 773 A.2d 131, 137 (Pa. Super. 2001) (citation omitted).

Here, in co-defendant Field's direct appeal, a panel of this Court affirmed the consolidation of the trials of the three co-defendants for the two murders on February 11, 2010. Specifically, we concluded that:

> . . . [T]he two murders were tied together by a common motive, *i.e.*, the elimination of drug rivals. The shooting occurred close in both time and location and involved an overlapping actor, Bryant, the protection of whose drug turf provided the motive. Moreover, evidence of each shooting would have been admissible as to the other pursuant to Rule 404 in order to show either motive or common scheme. Finally, the facts of the two shootings were not complicated and the jury was capable of distinguishing the evidence as it related to these three defendants. Indeed, the jury was clearly instructed by the trial court to evaluate the evidence offered by the Commonwealth as to each [defendant] individually [. . .] The law presumes that the jury will follow the instructions of the court. For the foregoing reasons, the trial court did not abuse its discretion by refusing to sever Field's prosecution from that of [Appellant and Bryant].

(*Fields*, *supra* at *4).

Instantly, there is nothing unique to Appellant's case that would render our analysis different than that which we stated above. We have already concluded that the trial court's denial of Fields' motion to sever was proper, and Appellant does not provide any argument for why the above analysis would be different had Appellant's counsel filed a motion to sever. Therefore, because a motion to sever would lack merit, the PCRA court properly found

that counsel was not ineffective for his failure to raise this issue. *See Bush*, *supra* at *1; *Smith*, supra at 1175. Appellant's fifth issue fails.[4]

Finally, in his sixth issue, Appellant maintains that the PCRA court erred in denying his claim that "PCRA counsel was ineffective for failing to argue that the cumulative effect of trial counsel's errors fundamentally denied him a fair trial." (Appellant's Brief, at 36). This issue lacks merit.

"It is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Smith*, *supra* at 1187 (citation omitted). Therefore, because Appellant's individual ineffective assistance of counsel allegations fail, his argument that they warrant relief collectively also fails. *See id.* Appellant's sixth claim does not merit relief.

Order affirmed.

Judge Panella joins the Memorandum.

Judge Strassburger files a Concurring Statement.

_____

[4] Moreover, we observe that the United States Supreme Court has rejected the argument that a non-capital defendant is prejudiced when his case is consolidated with a co-defendant's capital case. *See Buchanan v. Kentucky*, 483 U.S. 402, 418-19 (1987). Therefore, to the extent that Appellant attempts to make this argument, (*see* Appellant's Brief, at 31), it lacks merit.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/18